## Douglas v. Stokes.

(Decided September 27, 1912.)

### Appeal from Whitley Circuit Court.

1. Photographs—Publishing Without Consent of Customer.—A photographer has no right without his customer's consent to publish his photograph.
2. Photographs—Publishing Without Consent of Customer—Photographer Liable in Damages.—A photographer employed by the parents to photograph the nude body of a deformed child who copyrighted and published the photograph without the customers' consent is liable in damages to them.

SHARP, GATLIFF & SMITH for appellant.

P. WATT HARDIN, R. S. ROSE for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON— Affirming.

In December, 1908, there were born to G. W. Stokes and wife twin boy children. The children were together from the shoulders down to the end of their bodies. They had one set of bowels, breast bone or sternum, but were, otherwise, twins and not one baby. They died and after they were dead, Stokes employed

S. S. Douglas, a photographer, to take a photograph of the corpse in a nude condition, it being agreed that Douglas was to make for him twelve photographs and no more. Douglas made the photographs and delivered them to Stokes, but contrary to his agreement made other photographs from the negative and one of these he filed in the copyright office of the United States and a copyright was issued to him thereon on January 12, 1909. This action was brought by Stokes and wife against Douglas to recover damages for this use of the negative, they charging it had been done against their will and consent and that by the exposure of the photographs they had been humiliated and their feelings and sensibilities had been wounded. They prayed judgment against him for ten thousand ($10,000.00) dollars damages. Douglas by his answer put in the issue the allegations of the petition and the case was submitted to a jury the trial resulting in a verdict and judgment for the plaintiffs in the sum of twenty-five ($2,500.00) hundred dollars. Douglas appeals.

The above are the facts as they were, evidently, found to be by the jury under the instructions of the Court and appellant does not insist that the verdict of the jury is against the evidence.

Principally the only question made is that the facts do not make out a cause of action in favor of Stokes and wife against Douglas. It is insisted that the photographer has the right to copyright a photograph as it represents his skill in his art and we are referred to the case of Barrow v. Sarony, 111 U. S., 53, as sustaining this conclusion. In that case a photographer who had copyrighted a photograph sued a lithographer for using his copyrighted photograph without his consent. The subject of the photograph used was not a party to the litigation; no question was made in that case as to the rights of the person whose photograph was taken; and it may be inferred from the facts stated by the court in that case that the person whose photograph had been taken had no objection to his photograph being copyrighted and exposed to the public. The cases of Bowles v. The Outing Company, 77 Fed., 966; Snow v. Laird, 98 Fed., 813, and Werckmeister v. The Lithographing Company, 63 Fed., 809, are similar; but in this case the question arises between customer and the photographer. The question was before the English Supreme Court in

Pollard v. Photographing Co., 40 Chancery Division, 345, and it was held upon very full consideration of the authorities that the photographer has no right to make other copies of his customer's photograph without his consent. The court said:

"The question, therefore, is whether a photographer who has been employed by a customer to take his or her portrait is justified in striking off copies of such photograph for his own use, and selling and disposing of them, or publicly exhibiting them by way of advertisement or otherwise, without the authority of such customer, either express or implied. I say, 'express or implied,' because a photographer is frequently allowed, on his own request, to take a photograph of a person under circumstances in which a subsequent sale by him must have been in the contemplation of both parties, though not actually mentioned.

"To the question thus put, my answer is in the negative, that a photographer is not justified in so doing. Where a person obtains information in the course of a confidential employment, the law does not permit him to make any improper use of the information so obtained; and an injunction is granted, if necessary, to restrain such use, as, for instance, to restrain a clerk from disclosing his master's accounts, or an attorney from making known his client's affairs, learned in the course of such employment. Again, the law is clear that a breach of contract, whether express or implied, can be restrained by injunction. In my opinion, the case of the photographer comes within the principles upon which both these classes of cases depend. The object for which he is employed and paid is to supply his customer with the required number of printed photographs of a given subject. For this purpose the negative is taken by the photographer on glass; and from this negative copies can be printed in much larger numbers than are generally required by the customer. The customer who sits for the negative thus puts the power of reproducing the object in the hands of the photographer; and in my opinion the photographer who uses the negative to produce other copies for his own use, without authority, is abusing the power confidentially placed in his hands merely for the purpose of supplying the customer; and further, I hold that the bargain between the customer and the photographer in-

cludes, by implication, an agreement that the prints taken from the negative are to be appropriated to the use of the customer only.''

The ruling in this case has been followed in America, uniformly, so far as we have seen. Corliss v. Walker, 57 Fed., 434; Press Pub. Co. v. Folk, 59 Fed., 124; Moore v. Rugg (Minn.), 20 Am. St. R., 539; Manden v. Harris, (Mo.), 134 S. W., 1076.

The corpse of the children was in the custody of the parents. The photographer had no authority to make the photographs except by their authority, and when he exceeded his authority he invaded their right. We do not see that this case can be distinguished from those involving the like use of the photograph of a living person and this has been held actionable. See Foster Milburn & Co. v. Chinn, 134 Ky., 424; Morrison v. Smith, 177 N. Y., 366; Peck v. Tribune, 214 U. S., 185; Henry v. Cherry, 24 L. R. A., N. S., 991.

The most tender affections of the human heart cluster about the body of one's dead child. A man may recover for any injury or indignity done the body and it would be a reproach to the law if physical injuries might be recovered for and not those incorporal injuries which would cause much greater suffering and humiliation. See Revihan v. Wright, 9 L. R. A., 514; L. & N. v. Hull, 57 L. R. A., 771; Bessamer Allen Company v. Jenkins, 111 Ala., 135; Hockenhammer v. L. & E. Ry. Co., 24 R., 2383; Pierce v. Swan Point Cemetery, 14 Am. Rep., 667; Pavesick v. N. E. & I. Co., 122 Ga., 190.

If the defendant had wrongfully taken possession of the nude body of the plaintiff's dead children and exposed it to public view in an effort to make money out of it, it would not be doubted that an injury had been done them to recover for which an action might be maintained. When he wrongfully used the photograph of it a like wrong was done; the injury differing from that supposed, in degree but not in kind.

No question of copyright under the Statutes of the United States, is involved.

Judgment affirmed.